RAY E. GREEN, Clerk Circuit Court, Pinellas County, v. STATE ex rel. NORTHERN INVESTMENT CORPORATION.

191 So. 778
Opinion Filed October 31, 1939

*Kelly & Casler,* for Appellant;

*Carey & Harrison* and *William P. Simmons, Jr.,* for Appellee.

WHITFIELD, J.—An alternative writ of mandamus issued and filed July 19, 1939, by the circuit judge in effect alleges that the Northern Investment Corporation, a Florida corporation, on about June 25, 1937, filed a written request with the Clerk of the Circuit Court for Pinellas County, Florida, that he offer for sale any and all tax certificates then held by the State of Florida and more than two years old, together with all subsequent omitted or levied taxes covering lands in Pinellas County, Florida, described as Lots 9 to 12, inclusive, Block 46, Bayboro Subdivision, Section 30, Township 31 South, Range 17 East, such sale to be conducted in accordance with the provisions of Chapter 18296, Laws of Florida, 1937; that notice was published in accordance with said chapter; that on July 16, 1937, the clerk offered for sale Tax Certificate No. 14862, sale of 1929, Tax Certificate

No. 14747, sale of 1930, and part of Tax Certificate No. 29090, sale of 1933, all covering the described land, together with subsequent and omitted State and county taxes for the years 1930, 1931, and 1933 to 1937, inclusive, assessed and levied upon said land; that said tax certificates and subsequent and omitted taxes were sold to Northern Investment Corporation; that more than two years have expired since the purchase of the tax certificates and taxes referred to, and no person holding the legal title to the described land nor a lien holder has offered to redeem the same under the provisions of Chapter 18296; that under said chapter relator has become and is entitled to the right to apply for a tax deed covering said lands, said lands not constituting a homestead; that on July 17, 1939, relator by its attorneys, presented to respondent clerk at his office, said tax certificates together with receipts for subsequent and omitted taxes and requested said clerk to accept relator's application for a tax deed upon said lands and to issue to relator a tax deed covering said lands in accordance with the provisions of the statutes of Florida relating to the procedure for obtaining a tax deed by the holder of said tax sale certificates, and at the same time tendered to said clerk $11.20 representing his fees, costs and charges for issuing said tax deed; "and presented to said clerk a statement showing the full amount due upon said tax certificates and taxes, calculated at the original statutory rate and upon the original principal amounts of said tax certificates and taxes, to be $1,504.83, and asked that the tax deed issue for this amount plus the amount tendered by relator in payment of the clerk's fees, costs and charges for issuing said tax deed, unless those entitled by law to redeem said lands pay said respective amounts; that relator's request was refused by the respondent because of his belief that the only amount

recoverable upon said tax sale certificates and taxes is the amount bid and paid therefor at the sale held under Chapter 18296, together with interest at the rate of 3 per cent per annum from the date of such sale; that the taxes evidenced by the tax sale certificates and subsequent·or omitted taxes hereinabove described were lawfully assessed and levied, and no valid or legal reason exists for the clerk not accepting relator's application for tax deed and for not issuing said tax deed as requested; that relator is still the owner and holder of said tax sale certificates and taxes and that the same are ready to be produced upon the direction of this court; that it was and is the legal duty of respndent to accept relator's application for tax deed and to issue and execute such tax deed to relator upon failure of those having a lawful right to redeem to pay to the clerk the sum of $1,516.03; that no one except the respondent could legally accept relator's application for tax deed and legally execute such deed upon failure of those having a lawful right to redeem to exercise such right, and relator was and is without remedy except by mandamus.

"Now THEREFORE, we being willing that justice may be done in the premises, do hereby command you the respondent, Ray E. Green, as clerk of the Circuit Court of Pinellas County, Florida, to forthwith accept relator's application for tax deed based upon the tax certificates and subsequent or omitted taxes hereinabove described and issue, execute and deliver to relator a tax deed covering the lands described in said tax sale certificates, upon failure of those having the lawful right to redeem to exercise such right and pay to you the sum of $1,516.03, or that you show cause before this court, on the 20th day of July, 1939, at ten o'clock A. M. or as soon thereafter as this cause can be reached, why a peremptory writ should not issue from this

court commanding the same to be done, and have you then and there this writ.

"Done and Ordered at Chambers in Clearwater, Florida, this 18th day of July, A. D. 1939.

"T. Frank Hobson, Judge of the Circuit Court."

The answer of respondent includes the following:

"Respondent says that no proof has been submitted as to whether or not said land described in said petition constitutes a homestead and respondent says that until such question is adjudicated or determined he cannot, without endangering the rights both of respondent as well as the fee simple owner of said property, advertise said property for sale for purpose of issuance of tax deed. Respondent says that he is without knowledge or precedent as to the manner or method whereby determination or adjudication of the said question should be made, but deems it imperative that such determination or adjudication be made before relator's said application for tax deed is accepted; * * * that he was, and is, under no legal duty to accept relator's application for tax deed, and particularly upon the basis requested by relator, for the reasons heretofore, and hereinafter, set forth; * * * that he is without legal precedent as to what sum is required of the owner to redeem the said certificates of relator, or what sums shall be determined and considered the bid of relator for the property in the event same is advertised and sold for tax deed, but respondent's interpretation of said law is that the amount required by the owner of the property to redeem said certificate, or the amount to be considered the bid of relator for the property in the event same is advertised and sold for tax deed, is the actual amount paid by relator, plus interest and costs. Respondent denied that relator is entitled to any such sum as $1,560.03 in the event the owner

of the property now wishes to redeem, nor is the relator entitled to have any such sum considered as relator's bid for the property upon advertisement of the property for sale for tax deed, but respondent is ready and willing, when proper determination or adjudication is made of the question as to whether or not this property constitutes a homestead, to accept relator's application for tax deed, and proceed with the sale of said property on the following basis:

"Respondent's records show that relator paid for said tax certificates the sum of $40.10, $30.00 of said amount represented the bid for said certificates, and $10.10 the cost of fees in connection with the sale thereof; the relator will be required to pay the sum of $11.20 to respondent for additional fees, costs and publication charges, in order to have the property advertised for tax deed, and in the event the taxes are redeemed prior to the sale, respondent will require the party redeeming to pay the sum of $40.10 plus 3% interest per annum on the sum of $30.00 from July 16th, 1937, the date of the sale of said certificates, plus the said sum of $11.20, and in addition to said amount interest on the total of such sums for one month at the rate of 8% per annum. Respondent says that if the said tax certificates are not redeemed prior to the sale for tax deed the amount considered the bid of relator will be the amount hereinbefore referred to as the amount required of the owner to redeem said certificates. * * *

"Wherefore, it is apparent that relator is not entitled to receive any such sum as $1,504.83 in the event said certificates are redeemed, or is not entitled to have any such sum considered as his bid upon said property in the event same is sold for tax deed, but if entitled to any sum more than the amount actually paid for such certificates, plus costs

and interest, is entitled to no more than the face amount of the certificate upon which application for tax deed is based, plus interest, together with the amount actually paid for other certificates and subsequent and omitted taxes."

A peremptory writ was awarded with the following command:

"Now THEREFORE, we command you the respondent, Ray E. Green, as Clerk of the Circuit Court of Pinellas County, Florida, to forthwith accept relator's application for tax deed based upon the tax certificates and subsequent or omitted taxes described in relator's petition for writ of mandamus and upon the surrender and delivery to you of said tax sale certificates and receipts for subsequent or omitted taxes by relator, proceed to issue, execute and deliver to it a tax deed covering the lands described in said tax sale certificates, in accordance with the provisions of the statutes of Florida relating to the procedure for obtaining a tax deed by the holder of tax sale certificates, upon failure of those having a lawful right to redeem to exercise such right; and that in calculating the amount necessary to redeem and the amount to be considered as the bid of the relator at the sale held in connection with its application for tax deed, you will add to the amount due you for your legal fees and costs, the full amount due upon said tax sale certificates and taxes calculated upon their original principal amounts at the original statutory rate of interest. The total of said amounts including your legal fees and costs, is hereby determined to be $1,516.03."

Respondent took writ of error and assigned as error the peremptory writ as issued.

In a written application for a tax deed upon tax certificates sold under Chapter 18296, Acts of 1937, a statement in such written application or otherwise made a part thereof

·that the lands described in the tax certificates do not constitute a homestead may if not duly challenged be *prima facie* sufficient to justify the issuance of a tax deed, when it is otherwise lawful to issue the tax deed.

Chapter 18296, Acts of 1937, known as the Murphy Act, provides that: "It shall be the duty of any Clerks of Circuit Courts of the State of Florida, having custody or control of any tax certificates held by the State of Florida, that are more than two years old, to offer such certificates together with all subsequent omitted or levied taxes for sale at public outcry to the highest and best bidder for cash, when written request is made by *any person* for such sale, such written request to give description of land covered by such certificate sought to be purchased."

The clerk is required to publish notice of the sale "at public outcry," "not more than three weeks after such application."

If a "tax certificate together with subsequent or omitted taxes are purchased under the terms of this Act by any person or persons or corporation, not the owner of the land described in such certificate, then at the expiration of two years from the date of such certificate, such purchaser shall have the right to apply for tax deed as now provided by law for land described in such certificate, provided that for two years from date of sale of such certificate the owner of said land, that is, the person who held title to said land on date said certificate became two years old, or any grantee of such person, or their legal ·representative or any one holding any lien on such land, shall have the right to redeem such land from any or all of such tax certificates so sold, by the payment to purchaser thereof the amount bid therefor plus 3% per annum from the date of such certifi-

cate together with all costs paid by such purchaser in connection with purchasing said certificate."

"In the event any tax certificate together with subsequent or omitted taxes on a homestead are purchased under terms of this Act by any person or persons or corporations, not the owner of the land described in such certificate, then at the expiration of ten (10) years from the date of such sale of such certificate such purchaser shall have the right to apply for tax deed as now provided by law for land described in such certificate, provided that for ten (10) years from date of sale of such certificate the owner of said land, that is, the person who held title to said land on date said certificate became two years old or any grantee of such person or their legal representative or anyone holding any lien on such land shall have the right to redeem such land from such tax certificates so sold by the payment to purchaser thereof the amount bid therefor plus three per cent (3%) per annum from the date of sale of such certificate together with all costs paid by such purchaser in connection with purchasing said certificate."

The statute and the tax sale certificate in this case provide that the lands described in the tax sale certificate may "be redeemed by payment of such amount and within such periods of time as are provided by law," Section 981 (766) C. G. L. as amended by Chapter 14572, Acts 1929, Section 981 (766) Perm. Supp. to C. G. L.; and Section 985 (770) C. G. L. as amended by Section 9, Chapter 14572, Acts of 1929, Section 985 (770) Perm. Supp. to C. G. L. authorizes a redemption "at any time after a tax sale and before a tax deed is issued therefof." The statutory tax deed contains the following: "No person entitled to do so having appeared to redeem said land." "That said land should con-

tinue subject and liable to any unpaid taxes thereon." See Sec. 10, Ch. 17457, Acts 1935.

The clear intendments of Chapter 18296 are that in the redemption of lands covered by tax sale certificates sold under that Chapter to one not the owner of the land, the *persons entitled to so redeem* shall have the privilege of redeeming the lands by paying the amount bid and paid for the certificate and the subsequent omitted or levied taxes on the land to be redeemed, "plus 3% per annum from the date of such certificate together with all costs," etc., not only when the redemption is during the two-year period "from date of sale of such certificate," but shall also have those terms applied to the first two-year period when redemptions are made after two years *from the sale* of tax certificates under Chapter 18296, Acts of 1937. This accords with the terms of the tax sale certificates covering the lands and the provisions of the other statutes allowing redemption to be made at any time before a tax deed is issued by the payment of "such amounts as are prescribed by law."

Chapter 18296 gives to the purchaser of tax certificates, who is not the owner of the land, after two years from the purchasing the certificates "the right to apply for tax deed as now provided by law for land described in such certificate, provided that for two years from date of sale of such certificate" the owner and others may redeem on the above liberal terms. It is the manifest purpose of the Act that the stated liberal terms shall be allowed for two years even though the redemption is not made until after two years from the sale of the tax certificate under Chapter 18296, since the object and intent of the statute is to afford more liberal terms for redemption than is allowed by any previous enactment.

Section 6, Chapter 18296, makes the general law on the subject apply to applications for tax deeds and it is entirely consistent and appropriate for the statutes to require the application of the general law for redeeming the land before a tax deed is issued, not to the entire period after the sale of tax certificates under Chapter 18296 to the date of redemption, but only to the time after the two years during which more liberal terms of redemption were expressly provided for by Section 6, Chapter 18296. The purpose of the latter Act is to facilitate and encourage redemption of land from delinquent tax burdens; and the purpose of the general law, Section 985 (770) C. G. L. as amended in 1929, is to allow redemptions until tax deeds are issued, upon such terms as the law may provide, as stated in the tax certificate under the statute. The terms upon which lands described in tax sale certificates issued to the State may be redeemed have been changed many times in the interest of taxpayers, the leading purpose being that tax sale certificates issued to the State shall be subject to redemption *at any time before tax deeds are issued* covering the land described in the tax certificates, and upon the terms stated in the latest statutes as far as they may be applied to accomplish the legislative intent to afford all legal means to enable land owners to redeem their lands from delinquent tax liens.

Section 6, Chapter 18296, Acts of 1937, in providing that purchasers, other than the land owner, of tax sale certificates held by the State for unpaid taxes and sold at public outcry, may, after two years from the sale of the tax certificates, apply for a tax deed covering the land described in the purchased tax certificates under the law then in force, necessarily referred to Chapter 17457, Acts of 1935, which requires all applications for tax deeds issued on the

tax certificates to be filed with the clerk of the circuit court whose duty is to publish notice of a future sale at public outcry of the lands described in the tax certificates to the highest and best bidder for cash; and a tax deed may in due course be issued to the purchaser of the tax certificate at such public outcry. Those authorized to do so may redeem the land before a tax deed is issued by paying to the holder of the tax certificate "the amount required to redeem the tax certificate, plus the amounts paid by the holder thereof to the clerk of the circuit court in fees, costs of sale, redemption of other tax certificates on the same property, in short, all costs which the applicant for tax deeds has been put to, plus interest thereon at the rate of 8 per centum per annum for one month." Sec. 999 (142) Perm. Supp. to C. G. L.

What is "the amount required to redeem the tax certificate' during the two years after the sale of the tax certificate under Chapter 18296, Acts of 1937, is definitely stated in the latter Act. But as the land may be redeemed at any time before a tax deed is issued, such Act does not expressly regulate redemptions after such two-year period, and the amount required to redeem the tax certificate after two years from the sale of the tax certificate under Chapter 18296, must be found in other statutes on that subject. Section 985 (770) C. G. L. as amended by Section 9, Chapter 14572, Acts of 1929, provides that the owner, etc., of "lands sold for taxes * * * may redeem the same at any time after such sale (by the tax collector) and before a tax deed is issued therefor, by paying * * * the face of the certificate of sale and interest thereon at the rate of 18 per cent per annum for the first year and 10 per cent per annum for the second year, and eight per cent per annum thereafter, but not less than 5 per cent of the face of the

certificate." The redemption of subsequent tax certificates or omitted taxes is also provided for by the statute.

In this case the tax certificates were sold by the clerk under Chapter 18296 and the tax deed is applied for after two years from such sale of the tax certificates, and after application has been made for a tax deed to the land described in the tax certificates mentioned above.

It is entirely clear that Chapter 18296, Acts of 1937, is intended to afford extremely liberal terms for the redemption by authorized parties of lands covered by tax sale certificates held by the State for more than two years; and that such liberal terms were to apply *pro tanto* to the period after the two years from such sale and after tax deed is issued, as well as to the two years after such sale expressly provided for in Chapter 18296. This is in accord with the policy and intendments of Chapter 18296, and with the statutes making the lands described in the tax certificates redeemable according to laws regulating from time to time the periods within which, and the payments for which, such lands may be redeemed, the laws all being intended to favor taxpayers both as to amounts required and to time of redemption.

The result is that the amounts required to be paid for redemption in this case are (1) the $40.10 paid for the tax certificates and subsequent or omitted taxes; (2) interest thereon at 3 per cent per annum from the date of the tax certificate to July 16, 1939, two years after the sale under Chapter 18296; (3) the face of the oldest of the three tax certificates; (4) interest thereon at 18 per cent per annum for the first year from July 16, 1939, 10 per cent per annum for the second year, 8 per cent per annum thereafter, "but not less than 5 per cent of the face of the tax certificate"; (5) all clerk's costs and expenses incurred in obtaining the

tax certificates, etc. Secs. 985 (770) Perm. Supp. C. G. L. See also Sec. 999 (143) Perm. Supp. C. G. L. Under Chapter 18296 the oldest tax certificate and all subsequent certificates or omitted taxes are sold and redeemed together. Under prior statutes each certificate and omitted tax is redeemed or sold separately.

The two latter tax certificates and the tax receipts issued by the clerk in this case, representing subsequent or omitted taxes on the land, were included in the sale made for $40.10 under Chapter 18296.

Chapter 18296, Acts of 1937, was intended to greatly modify in favor of taxpayers the policy expressed in Section 42 and other provisions of Chapter 14572, Acts of 1929, and other statutes on the subject of the redemption of lands covered by tax sale certificates held by the State.

The judgment awarding a peremptory writ of mandamus on the terms stated in the writ is reversed and the cause is remanded for appropriate proceedings not inconsistent with this opinion.

It is so ordered.

TERRELL, C. J., and BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.