**BOSTON AND FLORIDA ATLANTIC COAST LAND COMPANY, a Maine Corporation, and ALICE R. PRUDDEN, v. RICKER ALFORD and MADISON REALTY COMPANY, a Florida corporation, et al.**

8 So. (2nd) 483                                  Division B
March 27, 1942          On Rehearing En Banc June 2, 1942

Bert Winters and W. J. Lake, for appellants.

Gedney, Johnston & Lilienthal, for Appellee Ricker Alford, and Manley P. Caldwell for Appellee Madison Realty Company.

CHAPMAN, J.:

The record in this case discloses that Ricker Alford on November 7, 1938, pursuant to the terms and provisions of Chapter 18296, Acts of 1937, Laws of Florida, commonly known as the Murphy Act, paid to the Clerk of the Circuit Court of Palm Beach County, Florida, the sum of $232.57 for tax sale certificate number 5928 of the sale held on July 4, 1927, for the 1926 state and county taxes in the principal sum of $3,372.82, and for certificate number 20,999 of the sale held on August 7, 1933, for the state and county taxes in the principal sum of $856.20. The original tax certificates were assigned by the clerk to Ricker Alford.

On February 19, 1941, Ricker Alford filed in the Circuit Court of Palm Beach County a bill of complaint in equity to foreclose the aforesaid state and county tax liens and sought a decree not for the amount paid for the certificates under the Murphy Act, but for the face amount of the certificates plus interest and court costs. All parties interested in the property were made defendants; answers were filed, and on final hearing a decree was entered for the face amount, plus interest on each certificate, in the total sum of $4,204.36. The actual money paid for the certificates was the sum of $232.57. The net profit to the plaintiff in the transaction was the sum of $3,971.79. An appeal has been perfected to this Court.

The question presented by the record for adjudication by this Court is whether the amount of recovery in the foreclosure proceedings should be limited to the amount paid for the involved certificates by the purchaser under the Murphy Act in the sum of $232.57, with interest since payment on November 7, 1938, or

should the face amount of the certificates, plus interest, be decreed in the total sum of $4,204.36, as decreed by the lower court.

The briefs fail to cite statutory authority to sustain the right of the plaintiff below to maintain a foreclosure proceeding of the tax certificates purchased under the Murphy Act. If the right exists, necessarily it must rest on the inherent jurisdiction of a court of equity to foreclose liens similar to the certificates here involved. If the decree is upheld, we find the plaintiff below as an actor in a court of equity with an admitted profit of $3,971.79 on an investment of only $232.57. Such a large profit flowing from so small an investment is rather unusual. One of the maxims of equity is that he who seeks equity must do equity and one coming into equity must come with clean hands.

One of the findings of fact by the Legislature in the enactment of the Murphy Act was that delinquent taxes valued at the sum of $97,000,000.00 were dead, frozen and depreciated assets and the amount of the tax certificates then appearing against lands situated in Florida, in many instances, exceeded the actual value of the land. The certificates were practically cancelled by the Act, and under the several provisions thereof the plaintiff below acquired title to the involved certificates.

The case of Lang v. Quaker Realty Corporation, 131 Fla. 179, 179 So. 144, involved tax certificates sold by the City of Miami to the Quaker Realty Corporation at a fractional part of the face value of said certificates, and it filed a bill of complaint in a court of equity to enforce payment of the face value of the certificates, plus interest, but this court held that the

Quaker Realty Corporation, as an actor in a court of equity, would be restricted to and could not recover a sum greater than the amount actually paid for the certificates, with interest from the date of purchase. This rule was reiterated in the case of Smith v. Lindsay, 133 Fla. 306, 182 So. 910; Shaw v. Hamm, 133 Fla. 722, 183 So. 19. The enunciations of this Court in Green v. State ex rel. Northern Investment Corp., 140 Fla. 386, 191 So. 778, do not affect or conflict with the rule established in Lang v. Quaker Realty Corporation, *supra,* and subsequently decided cases predicated thereon.

The plaintiff below, an appellee here, is restricted or limited in the amount recoverable to the sum of $232.57, the amount paid by him to the Clerk of the Circuit Court of Palm Beach County, Florida, for the two certificates numbered 5928 and 20,499 on November 7, 1938, with legal interest until paid, together with court costs.

The decree appealed from is hereby reversed for further proceedings not inconsistent with this opinion.

It is so ordered.

WHITFIELD, TERRELL and BUFORD, JJ., concur.

BROWN, C. J., THOMAS and Adams, JJ., dissent.

ADAMS, J., dissenting:

The decree is reversed because plaintiff, in a court of equity is reaping too great a profit. Such is not shown to be the case. Plaintiff holds a decree from which it might appear so. His only chance to satisfy the decree is against the property. There is no evidence that the property is worth so much. On the contrary we have a legislative finding pointing to the con-

trary. Be it remembered too, had the property been of substantial value the owner would likely have redeemed before plaintiff purchased. Then too it stands to reason, had the value been present it would have brought more at auction when plaintiff purchased the certificate. Before we put the chancellor in error for allowing an unconscionable profit it should affirmatively appear that such will be the result.

The majority opinion is planted upon equitable maxims that "he who comes into equity must do so with clean hands" and "he who seeks equity must do equity." These maxims import misconduct or bad faith to the moving party. There is not a claim of bad faith or misconduct and the record shows none. The controlling maxim is that "equity follows the law." Plaintiff invoked as of right the general jurisdiction of equity to foreclose his lien. Once in the equity court, the rules of law prevail when the rights of the litigants have been defined by law. The same is true where the parties have lawfully contracted as to their rights. See Pomeroy's Equity, Am. Juris. 5th ed. Section 425 et seq. and numerous cases there cited.

The rights of the parties have been defined by statute and interpreted by this Court. Chapter 18296, Acts of 1937, and Green v. State, 140 Fla. 386, 191 So. 778.

This case is distinguished from Lang v. Quaker Realty Co., 131 Fla. 179, 179 So. 144. In the Lang case the gist of the reason was that "absent statutory provision to the contrary and absent contract creating the lien the complainant is limited to that which equity will require."

As pointed out above the statute and this Court's opinion in the Green case fixed the amount to redeem

and therefore the law having fixed the same, the Lang case is not in point.

BROWN, C. J., concurs.

ON REHEARING

PER CURIAM:

On reconsideration of this cause, after rehearing granted the majority of the Court are of the opinion that the decree appealed from must be affirmed on the authority of the opinion and judgment in the case of Green v. Northern Investment Corporation, 140 Fla. 386, 191 Sou. 778.

In that case we definitely adjudicated the question as to what the owner of property would be required to pay to redeem from the lien under tax certificates sold to one other than the owner under the terms of Chapter 18296, Acts of 1937.

In this case the chancellor followed our enunciations found in the Green case, supra.

The decree is affirmed.

BROWN, C. J., BUFORD, THOMAS and ADAMS, JJ., concur.

WHITFIELD, TERRELL, and CHAPMAN, JJ., dissent.

WHITFIELD, J., Dissenting::

In Green v. State ex rel., 140 Fla. 386, 191 So. 778, the tax sale certificates were struck off to the State in 1929, 1930 and 1933, and were sold under the Murphy Act on July 16, 1937. On July 17, 1939, the purchaser of the certificates applied for a tax deed to be issued by the Clerk of the Circuit Court under Section 6, Chapter 18296, Acts of 1937, and Chapter 17457, Acts of 1935. No equitable considerations were applied and

the amount to be paid for redemption of the tax sale certificates before a tax deed for the lands is issued by the clerk, was determined under Section 6, Chapter 18296, Section 8, Chapter 17457, Acts of 1935, and Section 9, Chapter 14572, Acts of 1929, which statutes relate specifically to redemptions through the clerk, and not specifically to foreclosure proceedings brought by the purchaser of the tax sale certificates.

In this case the oldest tax sale certificate was struck off to the State July 4, 1927, for State and County taxes of 1926. That tax sale certificate and a subsequent one with all liens of the State for subsequent taxes on the same land, were on November 7, 1938, under the Murphy Act assigned by the Clerk of the Circuit Court acting for the State to Ricker Alford as the endorsement of the Clerk on the certificate shows, "in consideration of Two Hundred Thirty-two and 57/100 dollars, and other valuable considerations." The statute requires the amount paid for tax sale certificates to be endorsed thereon, and for purposes of redemption under the statute, such amount so endorsed on the certificate becomes in equity, if not also under the statute in proper cases, the "amount" or "face" of the certificate in the hands of purchasers from the State. The Murphy Act passes all subsequent omitted taxes with the oldest certificate purchased from the State.

The purchaser from the State in this case did not apply for a tax deed to be issued under the statute upon the tax sale certificate bought by him from the State, but brings an equity suit to foreclose his tax certificate lien, and in effect claims that for redemption purposes under the statute the "face" or

"amount" of the tax certificate he bought from the State is the original amount stated in the tax sale certificate when it was issued to the State by the tax collector, and not the amount required by the statute to be endorsed on the certificate by the Clerk, acting for the State, as being the amount paid by the purchaser to the State for the assignment of the certificate. The plaintiff has a tax lien only in the amount he paid for the certificate to the Clerk, plus statutory allowances. See Sec. 6, Ch. 18296, Acts 1937, the Murphy Act, Sec. 992 (77) 1940 Supp. C.G.L.

The amount of plaintiff's lien which he may enforce in equity as against those who under the statute have a right to redeem the land from the lien of the tax sale certificate issued in 1927, is, under Section 6, Chapter 18296, and Sections 7 and 8, Chapter 17457, Acts of 1935, and lawful interest rates, the amount endorsed on the tax sale certificate carrying also the rights which go with the certificate, under the Murphy Act, Chapter 18296, and appropriate interest and costs. Under Section 6, Chapter 18296, Section 992 (17) of 1940 Supplement to Compiled General Laws, the interest allowed for two years from the date of the certificate is three per cent per annum on such amount bid for and paid to and endorsed on the tax certificate by the Clerk including costs as required by the statute, and, under Section 7, Chapter 14572, Acts of 1929, Section 985 of the 1936 Supplement to Compiled General Laws, eight per cent per annum interest on such amount after the first two years from the date of the tax sale certificate, plus all the costs of the foreclosure suit, plus eight per cent per annum interest for one month on the amounts paid for the tax sale certificate and for Clerk's fees

and costs in the foreclosure proceedings. Secs. 17457, Acts 1935, Secs. 999 (142), 999 (143), 1936 Supp. to C.G.L. This result is both legal and equitable, and conforms to the purpose of the tax sale redemption statutes. The purchaser from the State of a tax sale certificate takes a lien for the amount paid for the assignment of the certificate from the State under existing statutes, plus the amounts allowed by statute for redemption purposes.

Amounts allowed for redemption purposes in the Green case had reference to tax sale certificates issued after 1928, see Section 9, Chapter 14572, Section 985, 1936 Supp. to C.G.L. If any statement in the Green case opinion is otherwise inconsistent with this opinion, such statement should not be followed.

TERRELL, and CHAPMAN, JJ., concur.

CHAPMAN, J., dissenting:

On November 7, 1938, Ricker Alford, and others, paid to the Clerk of the Circuit Court of Palm Beach County, Florida, under the provisions of Chapter 18296, Acts of 1937, Laws of Florida, known as the Murphy Act, the sum of $232.57 for State and County taxes for the years 1926 and 1927. Suit in chancery was brought to foreclose the tax liens and enforce payment, not for the sum of $232.27, plus interest, the amount paid the Clerk therefor, but for the full face amount of each of the certificates, with interest at the rate of 18% per annum. The prayer of the bill to foreclose the tax liens was granted, and on final hearing a decree was entered for the full face amount of the certificates, plus interest, which totaled the sum of $4,204.36. The final decree entered in a court of

equity sustained a net profit of $3,978.79 on an investment of only $232.57.

Confusion exsits on the question of whether or not the case at bar is ruled by Green v. Northern Investment Corp., 140 Fla. 386, 191 So. 778, or previous holdings of this Court beginning with the case of Lang v. Quaker Realty Corp., 131 Fla. 179, 179 So. 144, and reiterated in Smith v. Lindsay, 133 Fla. 306, 182 So. 910; Shaw v. Hamm, 133 Fla. 722, 183 So. 19; Banks v. Shaw, 144 Fla. 550, 198 So. 341, and Shaw v. Morrison, 145 Fla. 443, 199 So. 566.

Sections 13 and 14, and other provisions of Chapter 14572, Acts of 1929, Laws of Florida, authorized the owner or holder of a tax certificate to maintain a suit in equity and to recover the full face amount of the tax certificate, with statutory interest, attorney's fees and all court costs. Chapter 17442, Acts of 1935, Laws of Florida, specifically repealed the several provisions *supra* of Chapter 14572. Section 896 C.G.L., as amended by Chapter 18297, Acts of 1937, Laws of Florida, and Section 5034 C.G.L., authorize a suit in equity to enforce the payment of tax liens. The certificates here involved are not controlled by Chapter 14572, *supra*.

Section 5034 C.G.L. provides that all liens of any kind, whether created by statute or the common law, may be enforced by proceedings in chancery. Section 896, C.G.L., as amended by Chapter 18298, Acts of 1937, provides that "tax liens may be enforced by suit in equity."

Section 5 of Article IX of the Florida Constitution authorizes counties, towns and cities to assess and impose taxes for county and municipal purposes. State

and county taxes by statute become a lien on the property taxed superior to all other liens and are of equal dignity with municipal tax liens. See City of Sanford v. Dyal, 104 Fla. 1, 142 So. 233.

Municipal tax certificate liens were before the Court when each of the above cited cases were approved. Likewise Section 5034 C.G.L., providing for the enforcement of "all liens of any kind by proceedings in chancery," and this Court, in Lang v. Quaker Realty Corp., 131 Fla. 179, 179 So. 144, speaking through Mr. Justice Buford, in part said:

". . . It was well settled that the holder of the tax certificate bought from and assigned by the proper official becomes vested with the ownership of and the right to foreclose the lien evidenced by the certificate for the face amount·of the certificate in cases where the provisions of Chapter 14572, Acts of 1929, applied. But in this case the complainant must rest its right to foreclosure of its lien upon the inherent jurisdiction of courts of chancery to foreclose liens. See State ex rel. Dofnos Corp. v. Lehman, et al., 100 Fla. 1401. In such cases, absent statutory provision to the contrary and absent contract creating the lien, the complainant is limited to that which equity will require. In equity and good conscience the complainant is entitled to recover no more than a sum equal to the sum paid for the certificates with interest thereon from the date of the expenditure."

The inherent jurisdiction of a court of chancery to foreclose tax certificates as distinguished from the want of statutory authority is likewise developed in Shaw v. Hamm, 133 Fla. 722, 183 So. 19, when this Court, speaking through Mr. Justice Buford, in part, said:

"One who comes into the Chancery Court to foreclose a municipal tax certificate or improvement lien must come invoking that court's inherent equity jurisdiction without the aid of statute and must come with clean hands. The court of chancery will not lend itself in the exercise of only its inherent jurisdiction, and without statutory requirement, to the exacting of an unconscionable profit. The assignee of the certificates and improvement liens might have stood on his rights to use the same as the basis for the issuance of a tax deed and acquired title without invoking the intervention of a court of equity. He did not pursue that course. He was not entitled, absent statutory requirements, to have the aid of the court of equity any further than to require the delinquent taxpayer to reimburse him to no greater extent than the amount of his outlay in the purchase of the certificates and assessment liens. . . "

In Banks v. Shaw, 144 Fla. 550, 198 So. 341, this Court acted independently of statutory authority in considering a bill to foreclose municipal tax certificates where the recovery of the full face amount of the certificate, plus interest, was sought. Mr. Justice Buford, in behalf of the Court, in part, said:

". . . in the instant case we say that in equity and good conscience the plaintiff is entitled to redeem the certificates and to have the lien which is vested in the defendant by reason of the purchase of the certificates and to payment of subsequent taxes, cancelled upon the payment of the plaintiff to the defendant of an amount equal to the amount which the defendant actually paid for the certificates and the subsequent taxes, together with interest from date of payment to date of the decree.

"Equity is not concerned with the identity of the plaintiff, nor of the defendant. It is purpose of equity to do justice between the parties, regardless of the order in which they may appear on the court docket.

"If in a suit to foreclose a tax sales certificate by the holder thereof by assignment he may not require for redemption the payment of more than the certificate cost him with interest, it is because the owner should in equity and good conscience not be required to pay more than that amount for redemption."

In Shaw v. Morrison, 145 Fla. 443, 199 So. 566, the same rule was reiterated, when the Court, through Mr. Justice Buford, said:

"The holder by assignment of a tax lien may either proceed under the applicable statutes to acquire a statutory tax deed or may proceed in equity to foreclose the tax lien.

"In this case the tax lien holder elected to proceed in the court of equity and caused the title holder to be summoned into court to defend the foreclosure. The title holder answered the bill, admitted plaintiff's right to foreclose for the amount actually paid for the assignments of liens and, by timely amendment, offered to do equity by paying to plaintiff the amount which plaintiff had paid for the assignments of liens, with legal interest and costs, and thereby redeem the property involved from the several tax liens sought to be foreclosed. . . .

"There being no statutory provision authorizing recovery of attorney's fees by plaintiff in suits to foreclose tax liens, such fees are not recoverable. See Webb v. Scott, 129 Fla. 111, 176 Sou. 442; Leland v. Andrews, 129 Fla. 429, 176 Sou. 418.

The amount of recovery was properly limited to the amount actually paid by the plaintiff for the assignment of the tax liens with interest and costs. See Lang *et ux.* v. Quaker Realty Corporation, 131 Fla. 179, 179 Sou. 144; Shaw v. Hamm, 133 Fla. 722, 183 Sou. 19."

The legal rights of the holder or owner of tax certificates are controlled by the statutes in force and effect when the tax sale was made and the certificate assigned. The certificates here involved are controlled by the several provisions of Chapter 18296, Acts of 1937, Laws of Florida, known as the Murphy Act. This Court, in construing Section 6 and other provisions of the Murphy Act in Green v. State ex rel. Northern Investment Corp., 140 Fla. 386, 191 So. 778, had before it in a mandamus proceeding the amount of money necessary under Chapter 18296 *supra* to be paid by the owner to the Clerk to redeem, thereby precluding the issuance of a tax deed by the Clerk of the Court to the holder or owner of tax certificates.

The question propounded for adjudication therein is viz. (text 140 Fla. 388-9) :

". . . relator by its attorneys, presented to respondent clerk at his office, said tax certificates together with receipts for subsequent and omitted taxes and requested said clerk to accept relator's application for a tax deed upon said lands and to issue to realtor a tax deed covering said lands in accordance with the provisions of the statutes of Florida relating to the procedure for obtaining a tax deed by the holder of said tax sale certificates, and at the same time tendered to said clerk $11.20 representing his fees, costs and charges for issuing said tax deed; 'and presented to said clerk a statement showing the full amount due

upon said tax certificates and taxes, calculated at the original statutory rate and upon the original principal amounts of said tax certificates and taxes, to be $1,504.83, and asked that the tax deed issue for this amount plus the amount tendered by relator in payment of the clerk's fees, costs and charges for issuing said tax deed, unless those entitled by law to redeem said lands pay said respective amounts; that relator's request was refused by the respondent because of his belief that the only amount recoverable upon said tax sale certificates and taxes is the amount bid and paid therefor at the sale held under Chapter 18296, together with interest at the rate of 3 per cent per annum from the date of such sale; . . ."

The answer to the question posed *supra* is viz.: (text 140 Fla. 398-9)

"The result is that the amounts required to be paid for redemption in *this case* are (1) the $40.10 paid for the tax certificates and subsequent or omitted taxes; (2) interest thereon at 3 per cent per annum from the date of the tax certificate to July 16, 1939, two years after the sale under Chapter 18296; (3) the face of the oldest of the three tax certificates; (4) interest thereon at 18 per cent per annum for the first year from July 16, 1939, 10 per cent per annum for the second year, 8 per cent per annum thereafter, 'but not less than 5 per cent of the face of the tax certificate'; (5) all clerk's costs and expenses incurred in obtaining the tax certificates, etc., Secs. 985 (770) Perm. Supp. C.G.L. See also Sec. 999 (143) Perm. Supp. C.G.L. Under Chapter 18296 the oldest tax certificate and all subsequent certificates or omitted taxes are sold and redeemed together. Under prior statutes

each certificate and omitted tax is redeemed or sold separately." (Emphasis supplied.)

It was the chancellor's view and holding that Chapter 18296, *supra,* as construed by his court in Green v. Northern Investment Corp., *supra,* grants the power to a court of chancery to foreclose tax certificates, and, likewise, grants courts of chancery the power and authority to decree the payment of the face amount of the certificates plus statutory interest and court costs as prescribed in Section 6 of Chapter 18296, *supra.* We have thus presented for adjudication in this case two questions: (a) whether or not Chapter 18296, *supra,* grants power and authority to courts of chancery to foreclose tax certificates and to decree the payment of the face amount of the certificate as prescribed by Section 6 of the Act; and (b) whether or not the provisions of Chapter 18296, *supra,* are applicable to and shall govern courts of chancery, or are merely directory to circuit court clerks when computing the amount necessary to be paid by an owner of land desiring to redeem and preclude the issuance of a tax deed?

The title to Chapter 18296, Acts of 1937, *supra,* is viz.:

"An Act Relating to and Concerning Taxation and Providing for the Sale of Tax Certificates Together with Subsequent Omitted or Levied Taxes; and Further Providing for Vesting of Title to Land Covered by Tax Certificates in State of Florida."

The title of Chapter 14572, Acts of 1929, Laws of Florida, contains a provision for equity jurisdiction to foreclose tax certificates, and likewise the procedure to follow, and the language is viz.: "Providing for the Foreclosure in Equity of Tax Certificates and

Deeds and for the Procedure in Such Cases." The constitutionality of Chapter 14572, *supra,* was sustained by this Court. See Ridgeway v. Peacock, 100 Fla. 1297, 131 So. 140; Ridgeway v. Reese, 100 1304, 131 So. 136. It is inescapable that if courts of equity are by Chapter 18296, *supra,* granted power to foreclose tax certificates and decrees the payment of the face amount with interest and costs, then the title of the aforesaid Act should contain language granting and authorizing said grants as required by Section 16 of Article 3 of the Constitution. Likewise, the body of the Act should by clear, definite and concise language grant such power and authority, because Acts of this nature are strictly construed. See Messer v. Lang, 129 Fla. 546, 176 So. 548, 113 A. L. R. 1073; State ex rel. Bechard v. Leatherman, 129 Fla. 585, 176 So. 563.

There is no language in the title or body of the Act, or any reasonable inference to be drawn therefrom which grants or confers upon courts of chancery additional power to hear and determine tax certificate foreclosures. If such suits are brought under statutory authority, other than the several provisions of Chapter 18296, *supra,* then the chancellor in determining the amount of recovery, shall hold that the same shall not be the face amount of the certificate with interest, but that amount paid for the certificate by the purchaser to the Clerk, with interest and costs. Equity abhors penalties and forfeitures and actors appearing therein must come with clean hands and at all times do equity.

The case of Green v. Northern Investment Corp. *supra,* determines the rule governing and controlling Clerks of the Circuit Courts in computing the amount

due on certificates sold under the Murphy Act where an application for a tax deed is made and a redemption is desired to preclude the issuance of a tax deed.

It therefore follows that the original opinion of reversal for further proceedings not inconsistent with this opinion is adhered to.

It is so ordered.

WHITFIELD, and TERRELL, JJ., concur.